UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
GLENN LEVY individually and derivatively on
behalf of Trade Show Fabrications, Inc,

                                Plaintiff,                     **REPORT AND**
                                                                    **RECOMMENDATION**
                                                                    CV 16-2532 (EK) (ARL)
        -against-

RONALD SUISSA, et al.,

                              Defendants.
-------------------------------------------------------------X

**LINDSAY, Magistrate Judge:**

       Plaintiff Glenn Levy ("Plaintiff") brings this action against defendants Ronald Suissa, Amy Suissa, and AIK Consultants Corp. ("AIK") doing business as Corporate Design Concepts a/k/a CDC Exhibits (collectively, "Defendants") alleging that Defendants misappropriated and embezzled the assets of Trade Show Fabrications, Inc. ("TSF"). Currently before the Court, on referral from District Judge Komitee, is the motion by Ronald and Amy Suissa ("Moving Defendants") to dismiss the complaint for a lack of personal jurisdiction. For the reasons set forth below, the Court respectfully reports and recommends that the motion be granted.

## BACKGROUND

### A. Procedural History

       On May 18, 2016, Plaintiff filed a complaint against Ronald Suissa, Amy Suissa and Steven G. Legum. ECF No. 1. An Amended Complaint was filed on August 25, 2016, dropping the claims against Steven Legum and adding TSF as a nominal defendant. ECF No. 18. Defendants Ronald and Amy Suissa moved to dismiss the Amended Complaint and by order dated December 21, 2016, Judge Bianco granted, in part, and denied, in part, the motion. In June 2018, Plaintiff moved for permission to file a second amended complaint adding parties and

additional claims. By order dated February 26, 2019, Judge Bianco granted that motion. ECF No. 65. A second Amended Complaint was filed on March 25, 2019.[1] ECF No. 68. In the second Amended Complaint Plaintiff names Ronald Suissa, Amy Suissa, and AIK as Defendants. In August 2020, defendants Ronald and Amy Suissa filed the instant motion to dismiss for lack of jurisdiction and Plaintiff moved to disqualify counsel for the Suissas and AIK. In October 2020, defendant AIK filed a motion to dismiss the claims asserted against it. All three motions were referred to the undersigned by Judge Komitee in December 2020. This report and recommendation is addressed solely to the motion to dismiss for lack of jurisdiction.

### B. Factual Background

The following facts are taken from the Amended Complaint, documents referred to in the Amended Complaint, as well as the Declaration of Ronald Suissa In Support of Motion To Dismiss For Lack Of Subject Matter Jurisdiction, dated August 31, 2020 ("Suissa Dec."); Declaration of Glenn Levy In Opposition To Motion To Dismiss For Lack Of Subject Matter Jurisdiction, dated September 30, 2020 ("Levy Dec.") and the Reply Declaration of Ronald Suissa In Further Support of Motion To Dismiss For Lack Of Subject Matter Jurisdiction ("Suissa Reply Dec.").

The relationship between Plaintiff and defendant Ronald Suissa began in 1996 when Plaintiff was employed by TSF. Levy Dec. ¶ 5. In 2009, Plaintiff became a 50% percent shareholder in TSF with Defendant Ronald Suissa as the manager of the business operations in New York and Plaintiff in charge of the management of the business operations in Nevada. *Id.* Plaintiff and defendant Ronald Suissa were the sole shareholders of TSF. *Id.* At some point in

---

[1] Although this was the second amended complaint, it is styled Amended Verified Complaint, the same as the prior amended complaint filed two years earlier. *Compare* ECF No. 68 and ECF No. 18. For purposes of this report and recommendation, all references to the Amended Complaint shall be references to ECF No. 68.

2012, TSF ceased doing business. Levy Dec. ¶ 7. Plaintiff began working for 3D Exhibits Inc. in October 2012. *Id.*

Following the closure of the business, Plaintiff moved from Nevada to Florida and purchased a home. Am. Compl. ¶ 74. He and his wife purchased a home in Oviedo, Florida in September 2012. Levy Dec. ¶ 10. Plaintiff did not sell his home in Nevada until March 2013. *Id.* at ¶ 9. In Florida, Plaintiff maintained several bank accounts, *id*. at ¶ 29, leased two cars, *id* at ¶ 33, and owned a motorcycle. *Id.* at ¶ 37. While in Florida, on February 18, 2014, Plaintiff filed a Declaration of Domicile. Levy Dec. ¶ 12. At the time of filing the declaration of domicile, Plaintiff listed his address 411 Walnut Street, Green Coast Springs, Florida. *Id*.

In January 2014, Plaintiff and his wife contracted to purchase a home in Belize. *Id*. at ¶ 65. Upon learning he was unable to obtain financing to complete the purchase, Plaintiff decided to sell his home in Florida. *Id*. at ¶ 67. Plaintiff's only home in Florida was sold in March 2014. *Id*. At this point, Plaintiff, his wife and dogs moved all of their personal belongings to Belize. *Id*. at ¶¶ 68, 77. Everything that did not go with them was sold. *Id*. at ¶ 68. Plaintiff states that it was his intention to effectuate a quick sale of the property in Belize and then return to Florida, however, due to a series of unfortunate events, Plaintiff's plans did not come to fruition and he was unable to sell his home in Belize until November 2017. *Id*. at ¶¶ 62-94. After the sale of his home in Belize, Plaintiff states that in November and December of 2017 and January 2018, I stayed with [a friend] in New York because I had no house and no place to reside." *Id.* at ¶ 27. In December 2017, Plaintiff purchased a home in Nevada and did not return to Florida. Suissa Dec., Exh. C.

During his time in Belize – March 2014 through November 2017 – Plaintiff did not

3

maintain another residence and indeed did not regularly stay in any location other than Belize.[2] Levy Dec. ¶¶ 68-94.  He did, however, make public statements to the press in Belize stating that Belize was his "home" and declared "I want to live in this great country." *Id*. at ¶¶ 86.  In addition, Plaintiff and his wife purchased a business in Belize in September 2014, the YoMama frozen yogurt store. *Id*. at ¶ 103.[3]  Each of Plaintiff's business trips between 2014 and 2017 started and ended in Belize.  *Id*. at Ex. H. At his deposition in 2019, Plaintiff stated that from 2014 when he purchased the home in Belize up until January 2017 his full-time residence was Belize.  Suissa Dec., Exh. B p.9.

## DISCUSSION

### A.   Standard of Review

The Moving Defendants move to dismiss the complaint pursuant to Rule 12(b)(1) for a lack of subject matter jurisdiction.  Subject-matter jurisdiction may be challenged at any time and if it is lacking the case must be dismissed or remanded by the court.  *See* Fed. R. Civ. P. 12(h)(3); 28 U.S.C. § 1447(c).  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "[T]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l*

---

[2] Plaintiff identifies hotel stays for business purposes and a two-month period where he stayed with a friend in New York, but otherwise, it appears Plaintiff was living in Belize.

[3] The Moving Defendants also reference a second business in Belize, NancyLevy Design.com, however, it is unclear whether this business is or was based in Belize.  Memorandum of Law in Support of Defendants' to Dismiss for Lack of Subject Matter Jurisdiction ("Def. Mem.") at 5.

*Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citations and internal quotation marks omitted), *aff'd*, 561 U.S. 247 (2010). In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider relevant documents that are extrinsic to the complaint. *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd*, 561 U.S. 247 (2010).

A federal court's subject matter jurisdiction may be predicated on federal question jurisdiction, *see* 28 U.S.C. § 1331, or diversity of citizenship jurisdiction, *see* 28 U.S.C. § 1332. Plaintiff here bases jurisdiction on diversity of the parties. Am. Compl. ¶ 62. "Diversity jurisdiction under 28 U.S.C. § 1332 is proper 'only if diversity of citizenship among the parties is complete, *i.e.*, only if there is no plaintiff and no defendant who are citizens of the same State." *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 217-18 (2d Cir. 2016) (quoting *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998)). Diversity is measured as of the time the action is commenced. *Id.* Plaintiff bears the burden of establishing that diversity jurisdiction existed at the time the action was commenced. *Linardos v. Fortuna*, 157 F.3d 945, 947 (2d Cir. 1998). For purposes of diversity jurisdiction, citizenship is based upon domicile. *Id.* at 948.

"Domicile is the place where a person has his true and fixed home and principal establishment, and to which, whenever he is absent he has the intention of returning." *Id*. Because a person can have multiple residences, but only one domicile, "allegations of residency alone cannot establish citizenship." *Canedy v. Liberty Mut. Ins. Co.*, 126 F.3d 100, 102-03 (2d Cir. 1997); *Dyer v. Robinson*, 853 F. Supp. 169, 172 (D. Md. 1994) ("[A]lthough a person may have more than one residence, he may only have one 'domicile' for purposes of determining subject matter jurisdiction").

In determining domicile "[f]actors frequently taken into account include current residence, voting registration, driver's license and automobile registration, location of brokerage

5

and bank accounts, membership in fraternal organizations, churches, and other associations, places of employment or business, and payment of taxes." *Bank of India v. Subramanian,* No. 06 Civ. 2026 (WHP), 2007 U.S. Dist. LEXIS 35148, at *3 (S.D.N.Y. May 15, 2007). Courts also consider "whether a person owns or rents his place of residence, the nature of the residence (i.e., how permanent the living arrangement appears) . . . and the location of a person's physician, lawyer, accountant, dentist, stockbroker, etc." *Nat'l Artists Mgmt. Co., Inc. v. Weaving*, 769 F. Supp. 1224, 1228 (S.D.N.Y. 1991). No single factor is determinative, and courts must consider the "totality of the evidence." *Nat'l Artists*, 769 F. Supp. at 1228.

C. **Analysis**

The Moving Defendants have moved to dismiss the Amended Complaint, because, according to them, although Plaintiff alleged in the original complaint that he was a resident of the State of Florida, this was not true, Plaintiff actually resided in Belize at the time and therefore, this Court lacks diversity jurisdiction.[4] Plaintiff, however, takes the position that his actions in 2012 of purchasing a home in Florida, followed by his filing of a Declaration of Domicile in February 2014, one month before selling his home and leaving the state, are sufficient to establish domicile in Florida for purposes of diversity jurisdiction. The Court disagrees.

Once challenged, the party invoking diversity jurisdiction must prove domicile by a preponderance of the evidence.[5] *Thomson v. Gaskill*, 315 U.S. 442, 446, 62 S. Ct. 673, 86 L. Ed.

---

[4] In Plaintiff's Amended Complaint, he alleges he is a resident of Nevada, Am. Compl. ¶ 1, however, for purposes of diversity the Court must consider Plaintiff's domicile at the time of the filing of the original complaint. *See Solow v. Stone*, 994 F. Supp. 173, 177 n.4 (S.D.N.Y.), *aff'd*, 163 F.3d 151 (2d Cir. 1998).

[5] Throughout Plaintiff's opposition, he argues that the burden is on the Moving Defendants to establish a change in domicile, however, first Plaintiff must establish domicile by a preponderance of the evidence which he fails to do. "[T]he party asserting diversity jurisdiction must first establish his domicile and only then does the challenger assume the burden of proving that there has been a change in that situation." *Finnegan v. Long Island Power Auth.*, 409 F. Supp. 3d 91, 97 (E.D.N.Y. 2019); *see also Herrick Co. v. SCS Communications, Inc.*, 251 F.3d 315, 324 (2d Cir. 2001) ("a party seeking to challenge diversity by alleging a change of domicile does not, even under Gutierrez,

6

951 (1942) ("Accordingly, if a plaintiff's allegations of jurisdictional facts are challenged by the defendant, the plaintiff bears the burden of supporting the allegations by competent proof"); *see also Garcia Perez v. Santaella*, 364 F.3d. 348, 350 (1st Cir. 2004); *Bank One, Texas, N.A. v. Montle*, 964 F.2d 48, 50 (1st Cir. 1992).   Thus, the Court must first determine whether Plaintiff has established his domicile in Florida.

"In general, domicile has two components: (1) physical presence in a state, and (2) the intent to make the state a home." *LoCurto v. LoCurto*, 07CV8238, 2008 U.S. Dist. LEXIS 78862, 2008 WL 4410091, at *3 (S.D.N.Y. Sept. 25, 2008).  "Residence in a jurisdiction is a *necessary*, but not sufficient, factor in establishing domicile." *Hatfill v. Foster*, 415 F. Supp. 2d 353, 365 (S.D.N.Y. 2006) (emphasis added) (citing *Blackson v. Blackson*, 40 Va. App. 507, 520, 579 S.E.2d 704 (Va. App. 2003)).  Plaintiff, therefore, must demonstrate that at the time of filing the complaint he had a residence in Florida, i.e., that he has a physical presence in the state.

It is undisputed, that at the time of filing the complaint Plaintiff was living in Belize. Suissa Dec., Exh. B p.9.  Nevertheless, a person who is a United States citizen living in a foreign country may maintain a domicile in the United States as long as he or she continues to have a home in a particular state and an intent to return there.  *See Universal Reinsurance Co. v. St. Paul Fire & Marine Ins. Co.*, 224 F.3d 139, 141 (2d Cir. 2000) ("Of course, a person may still be domiciled in a state even if a non-resident, so long as he or she has his home there and intends to return").  Plaintiff  here has failed to demonstrate that he maintained a home in Florida. Accordingly, here, just as in *Universal*, the court cannot conclude that Plaintiff is domiciled in Florida, when his only residence is in Belize.

Plaintiff points to his 411 Walnut Street address as proof of residence in Florida.  A

---

bear the burden of proving that change if the party seeking to establish diversity has not carried its (prior) burden of establishing a specific initial domicile from which the change would be a departure").

google search of the address reveals it is a retail space which is home to a mail forwarding service.  In 2017, Levy was asked at a deposition about the address and he responded that he lived there.  Upon further questioning he claimed that he lived at Dandelion Court in Oviedo, a home he sold in 2014, and then he stated he had a friend that lived in the retail space on Walnut Street that he could stay with.  Suissa Reply Dec. Exh. 7.  Finally, he admitted that the address was nothing more than a mailbox and when was asked "Your home, your residence, full-time residence, is in Belize; is that correct?"  He responded, "That is correct."  *Id*.  In his deposition in 2019,  Plaintiff was somewhat more forthcoming and admitted right away that the 411 Walnut Street address was nothing more than a p.o. box and that he did not live or sleep there.  Suissa Dec., Ex. B, p. 82

In his deposition, Plaintiff ultimately admits the Walnut Street address in Florida is nothing but a mailbox.  *Id*.  A mailbox is insufficient to establish domicile.  *See, e.g*., *Fort v. ABZCO, LLC*, 470 F. Supp. 3d 133, 137 (D. PR. 2020) (rejecting Plaintiff's claim of diversity jurisdiction based upon New Jersey domicile because "[m]ost notably, [plaintiff] no longer has a residence in New Jersey to which she can return. The only New Jersey address cited by [plaintiff] is a P.O. Box"); *Bobo v. City of Fresno*, No. 6:14-CV-01070-MC, 2014 U.S. Dist. LEXIS 104411, 2014 WL 3784103, *1 (D. Or. July 31, 2014) ("Plaintiff also lists a post office box for his Oregon address, which is not a permanent abode and not sufficient proof of domicile"); *Smith v. Breakthrough Int'l*, Case No. 12-1832, 2013 U.S. Dist. LEXIS 125581 *13 (N.D. Cal. Sept. 3, 2013) ("But just having a post office box in Portland today would not be not sufficient proof of domicile");  *Gravdahl v. Conwell*, No. 00-C-0579, 2002 U.S. Dist. LEXIS 4184, 2002 WL 398599, at *2 (N.D. Ill. Mar. 14, 2002) ('we have little trouble concluding that post office box cannot establish a domicile or residence').

8

Plaintiff relies upon *Willis v. Westin Hotel Co*., 651 F.Supp. 598 (S.D.N.Y.1988) to support his position. In *Willis*, the Plaintiff left her home in Florida for a nomadic existence, staying at hotels throughout the country, without any true home. *Id*. at 600. All of her personal belongs were left in storage in Florida. *Id*. The Court determined that '[u]p to the time of her accident plaintiff's New York accommodations were strictly on a day to day basis. Her continued stay in New York after the accident appears largely health related. Thus, despite its duration, plaintiff's long residence in New York was not of a nature to suggest an intent to abandon her Florida citizenship." *Id*. at 604. Here, however, Plaintiff purchased a home in Belize, sold his home in Florida and moved his wife, dogs and all of his personal belongings to Belize. Unlike the Plaintiff in *Willis*, Plaintiff did have a home and it was located in Belize and not Florida.

Plaintiff argues that residency and domicile are not synonymous. The Court agrees. "It is well settled that although an individual may have several residences, he or she can have only one domicile at any one time." *Ming Li v. Colonial BT, LLC,* No. 3:14-cv-999 (CSH), 2014 U.S. Dist. LEXIS 98500, 2014 WL 3579469, at *5 (D. Conn. July 21, 2014) (citing cases); *Chappelle v. Beacon Communications Corp.,* 863 F. Supp. 179, 181 (S.D.N.Y. 1994) (stating that "[e]ven though a party may have several places of residence, he or she may have only one domicile at a given time . . . Generally, a "domicile" is distinguished from a "residence" by the permanency and scope of the party's presence there").

However, "[a]lthough residence is not equivalent to domicile, it is, nonetheless, highly relevant to the issue of domicile." *Palmas del Mar Homeowners Ass'n v. Fox,* CIVIL 06-1636CCC, 2008 U.S. Dist. LEXIS 25790, 2008 WL 901950 (D. PR. Mar. 31, 2008) (citing *Lundquist v. Precision Valley Aviation, Inc.,* 946 F.2d 8, 11 (1st Cir.1991)). Indeed, " a party's residence at [the time the case is filed] is prima facie evidence of his domicile*." Kavowras v.*

9

*Pinkerton Inc.*, No. 97 Civ. 6098 (MBM), 1998 U.S. Dist. LEXIS 5962, 1998 WL 209617, at *1 (S.D.N.Y. Apr, 29, 1998); *see also Galu v. Attias*, 923 F. Supp. 590, 595 (S.D.N.Y. 1996).  At the time of the filing of the complaint, Plaintiff's only residence was in Belize.  Fundamental to the concept of domicile is maintaining a physical presence in the state, which Plaintiff failed to do with respect to Florida.  The cases cited by Plaintiff address situations where an individual maintains multiple residences and it is necessary to look further to determine domicile.  *See, e.g., Palazzo ex rel. Delmage v. Corio,* 232 F.3d 38, (2d Cir. 2000) (defendant maintained a residence with parents in New York and with grandparents in Pennsylvania); *Gutierrez v. Fox*, 141 F.3d 425 (2d Cir. 1998) (court was asked to determine domicile based upon the amount of time spent away from one home while staying with his girlfriend at another).  Here, however, Plaintiff has only one residence and that is in Belize.

In *Borderud v. Riverside Motorcars, LLC,* No. 3:18-cv-1291 (VAB), 2020 U.S. Dist. LEXIS 84762 (D. Conn. May 13, 2020) the court was asked to consider the domicile of a Plaintiff who had lived in Connecticut, then moved to New York and then lived for close to a year in Mexico.  The Court first looked to the relationship between Connecticut and New York and determined that since Plaintiff had moved from Connecticut to New York, even though his bank, drivers license and voter registration were still in Connecticut, he no longer had a physical presence in Connecticut and could not be domiciled there.  *Id.* at *15.[6]  Similarly, here, once Plaintiff sold his home in Florida he no longer had a physical presence in the state and could not be domiciled there.

Plaintiff argues that he has provided documentary evidence to establish his continued

---

[6] The Court determined that Plaintiff was not domiciled in Mexico even though he had maintained residences in both locations because the indicia of domicile weighed in favor of New York over Mexico. *Borderud,* 2020 U.S. Dist. LEXIS 84762, * 16.

10

domicile and presence in Florida. Pl. Mem. at 10. Much of the evidence presented does not relate to the relevant time period, May 18, 2016.[7] Plaintiff has, however, provided evidence that his driver's license was issued by the state of Florida at the time he filed the suit (prior to 2012 and after 2018 Plaintiff maintained a driver's license issued by the State of Nevada). Levy Dec. ¶ 14. In addition, Plaintiff has submitted proof that he maintained a bank account in Florida and his paychecks were deposited into that account between September 30, 2015 through January 5, 2018. Levy Dec. ¶ 17. Plaintiff also contends that his credit card statements and brokerage account statements were sent to 411 Walnut Street, Green Cove Springs, Florida. *Id*. at ¶¶ 32, 33. Plaintiff further argues that "[b]etween 2012 and the present I have always had health insurance provided through my employer 3D Exhibits either through Blue Cross Blue or United Healthcare. From 2012 through 2018 all information concerning these plans was sent to my addresses in Florida. *Id*. at ¶ 38. Notably absent from the evidence provided by Plaintiff is any evidence of any continued presence in the state, whether in the form of ownership or rental, or even in the form of a regular place to stay with a friend or relative. Plaintiff provides a list of trips taken in 2016, however, none of those trips indicate a stay of any length of time in Florida, and indeed, with respect to each of the trips Plaintiff left from and returned to Belize. *See* Levy Dec. at Exh. G. On the other hand, Plaintiff's only residence was in Belize, all of his personal belongings were in Belize, his wife and dogs were in Belize and he owned at least one business in Belize. *Id.* at ¶¶ 68-70.

    Finally, Plaintiff's statement that his intent was always to return to Florida is entitled to

---

[7] For example, Plaintiff points to his car leases and boat and motorcycle ownership, no of which continues after he moved to Belize in 2014. Plaintiff also claims he was in Orlando, Florida multiple times during each month to work shows, supervise and seek business. Levy Dec. ¶ 21. However, a review of his credit card statements for the period do not indicate that he spent any time in Florida in 2015 or 2016. *Id*., at Exh. H.

11

little weight.[8]  "Although intent is crucial to one's domicile, mere subjective statements of affiliation with a particular state or of an intent to make it one's home . . . cannot suffice for a finding of state citizenship if such statements are belied by objective indicia of actual residence and intent." *Nat'l Artists Mgmt.*, 769 F. Supp. at 1228; s*ee also Coury v. Prot*, 85 F.3d 244, 251 (5th Cir. 1996) ("A litigant's statement of intent is relevant to the determination of domicile, but it is entitled to little weight if it conflicts with the objective facts."); *Finnegan,* 409 F. Supp. 3d at 96 (E.D.N.Y. 2019) ("[a] party's own declarations concerning the identity of his domicile, particularly with regard to an intent to retain or establish one, as is true of any self-serving statement, are subject to judicial skepticism. As many federal courts have made clear, they are accorded little weight by the district judge when they are in conflict with the facts or a party's actual conduct" ) (citations omitted) ; *Gravdahl v. Conwell*, No. 00-C-0579, 2002 U.S. Dist. LEXIS 4184, 2002 WL 398599, at *2 (N.D. Ill. Mar. 14, 2002) ("current statement that his intent was always to remain domiciled in Illinois is entitled to little weight because it is influence by his self-interest in the outcome of this case"); *Farrell v. Ashton*, No. 89 Civ. 6706 (WCC), 1991 U.S. Dist. LEXIS 2331, 1991 WL 29261, at *1 (S.D.N.Y. Feb. 28, 1991) ("Although intent is crucial to domicile, mere subjective statements of affiliation with a particular state or of intent to make it one's home cannot suffice for a finding of state citizenship if such statements are belied by objective indicia of actual residence and intent.").  Because Plaintiff has failed to demonstrate that he has maintained a physical presence in Florida, his intent to return there one day is not entitled to great weight.

---

[8] Similarly, Plaintiff's filing of a Declaration of Domicile shorty before leaving the state is entitled to little weight.  *See Gold v. Katz*, No. 90-CV-7726, 1991 U.S. Dist. LEXIS 15944, 1991 WL 237807 (S.D.N.Y. Nov. 4, 1991) ("In addition, plaintiff filed a 'Declaration of Domicile' in Florida, although as plaintiff's own subjective statement of his domicile, it must be evaluated in light of other factors that are more 'objective indicia of actual residence and intent'").

12

Indeed, Plaintiff's own statements are in conflict. In the Amended Complaint Plaintiff alleges he is a resident of the State of Nevada. Amended Compl. ¶ 1. ECF No. 68. In the original Complaint, Plaintiff alleged he was a resident of Florida. ECF No.1 at 1. For purposes of this motion, Plaintiff argues he is domiciled in the State of Florida. But at the time of filing the Complaint, his only residence was located in Belize. While Plaintiff claims he moved to Florida, with the intent to remain there, in 2012, he did not remain in Florida long. Less than two years later Plaintiff sold his only home in in Florida and moved all of his personal belongings to Belize, where he remained for over three years. After he left Belize he did not return to Florida but rather purchased a home in Nevada. Weighing all of the evidence presented, the Court concludes that Plaintiff has failed to establish that he was domiciled in Florida at the time the complaint was filed because he has failed to establish he maintained a presence in the state at that time.

Since it is Plaintiff's burden to establish that subject matter jurisdiction is proper, and, after weighing the evidence provided the undersigned concludes Plaintiff has failed to provide the Court with sufficient support for his contention that he was domiciled in Florida at the time the complaint was filed, the undersigned respectfully recommends a finding that jurisdiction is lacking.

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served by the Court on the parties. Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 14 days. Failure to file objections within this period waives the right to appeal the District Court's Order. See 28 U.S.C. §

636(b)(1); Fed R. Civ. P 72; *Mejia v. Roma Cleaning, Inc.*, No. 17-3446, 2018 U.S. App. LEXIS 28235, 2018 WL 4847199, at *1 (2d Cir. Oct. 5, 2018) ("Plaintiff has waived any objections to the Magistrate's finding" by failing to timely object); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 92 (2d Cir. 2010); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997).

Dated:  Central Islip, New York
        March 19 , 2021

                                        _____/s/_____
                                        ARLENE R. LINDSAY
                                        United States Magistrate Judge